UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LES KEPLEY, et al.                                                              PLAINTIFFS

v.                                                 CIVIL ACTION NO. 3:10CV-695-CRS

GERALD L. LANZ                                                DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court for consideration of the following motions:

(1) Motion of the defendant, Gerald L. Lanz, to dismiss for lack of personal jurisdiction, on the ground of forum *non conveniens,* and for failure to state a claim upon which relief can be granted (DN 62);

(2) Motion of the plaintiffs, Les and Bruce Kepley, for default judgment, for a hearing, and to strike an unauthorized pleading (DNs 63); and

(3) Motion of the plaintiffs, Les and Bruce Kepley, to strike an unauthorized reply to a motion to dismiss (DN 69).

For the reasons set forth herein, the court will deny all of these motions.

I. Background[1]

In 1994, Les Kepley incorporated A Technological Advantage, Inc. ("ATA"), a Kentucky corporation that provides post-secondary education services. Bruce and Les Kepley, brothers and

---

[1] Much of the text in this section is taken from the May 9, 2013 decision of the United States Court of Appeals for the Sixth Circuit.

residents of Kentucky, owned approximately 30% of ATA's issued and outstanding capital stock. About ten years later, Gerald Lanz, a Florida resident, became an investor in ATA when he bought one share of Series A Convertible Preferred Stock in the corporation and a right to purchase common stock. At the time of the purchase, Lanz, ATA, and ATA's shareholders entered into an Investors Rights Agreement ("IRA") agreeing to restrict the sale of certain stock, including the share owned by Lanz, and prohibiting the sale of restricted shares to competitors of ATA.

On May 14, 2010, the Kepleys received notification that Lanz intended to sell his restricted share and his right to purchase additional shares of common stock in ATA to Crimson Aero Holdings Corporation ("Crimson"), a competitor of ATA, for the proposed prices of $2,799,000. Relying on the IRA, the Kepleys filed suit in state court seeking a declaration that the proposed sale was prohibited by the IRA and requesting that the sale be voided if it took place. On June 9, the Kepleys voluntarily dismissed the declaratory judgment action with prejudice.

The Kepleys then filed another suit in state court, alleging that Lanz's attempt to sell his stock "breached and/or anticipatorily breached" the IRA. They contended that in response to their objection to the sale, Crimson's President told the Kepleys that they (the Kepleys) could not afford the Lanz shares and could not "fund litigation – we can," and that Crimson would "shut it down or squeeze them out." The Kepleys allege that they were forced to sell their shares of capital stock in ATA to Crimson at a value much lower than fair market value. After selling their shares to Crimson, Lanz did not complete the sale of his stock and remained a shareholder in ATA, 30% of which Crimson then owned. The Kepleys complaint sought the difference between the sale price and the fair market value of the shares as damages.

Lanz removed the state court case to federal court and filed a motion to dismiss, arguing that he was not subject to personal jurisdiction in Kentucky; that the Kepleys' lawsuit was barred by the doctrine of res judicata; and that the doctrine of forum *non conveniens* militated in favor of dismissal. The district court granted the motion, but on different grounds. The court, sua sponte, dismissed the case under the "shareholder standing rule." The court determined that the Kepleys lacked standing to bring their claims because the alleged breach of the IRA by Lanz harmed the corporation and was therefore a derivative claim. Although recognizing that an exception to this general rule exists when the shareholder suffers an injury that is "separate and distinct" from that suffered by the corporation, the court found the exception inapplicable. The court found that the injury alleged by the Kepleys amounted to diminution in stock value which was suffered by the corporation, and was only derivatively shared by the Kepleys. A motion by the Kepleys to vacate pursuant to Federal Rule of Civil Procedure 59(e) was denied on the same grounds.

The Kepleys appealed and the Court of Appeals reversed the dismissal, disagreeing with this court's application of the "shareholder standing rule" to the particular facts of the case. The Court of Appeals took issue with the district court's conclusions in determining the nature of the duty allegedly owed by Lanz and the nature of the injury purportedly suffered by the Kepleys. The Court of Appeals also noted that although Lanz urged that the action should be precluded on res judicata grounds, that question had not been decided in the first instance by the district court due to the dismissal for lack of standing. The court reversed and remanded the case. The claim preclusion question has since been resolved by the district court in the Kepleys' favor.

Lanz filed a second motion to dismiss, reasserting the arguments for dismissal on the grounds of lack of personal jurisdiction and forum *non conveniens* he raised in his initial dismissal motion. He also raised a Fed.R.Civ.P. 12(b)(6) ground for the first time in the second motion to dismiss.

The Kepleys have objected to Lanz's second motion to dismiss on both procedural and substantive grounds. They also seek default judgment, as no answer has yet been filed in the case. The court will address the motions *seriatim*.

## II. The Motions

### A.

The Kepleys move to strike Lanz's motion to dismiss on jurisdictional grounds, urging that Lanz's has already received an implicit denial of this motion, originally filed as DN 10, when the court dismissed the action *sua sponte* for lack of standing under the "shareholder standing rule." This contention is without merit. As recognized by the Court of Appeals, a plaintiff's standing to bring a claim is a question of subject matter jurisdiction which the court may, and in this instance, did raise *sua sponte*. *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007). The Court of Appeals noted that "...the district court did not have the opportunity to address the...applicability [of the doctrine of res judicata] because it determined that the Kepleys lacked standing." (DN 33, p. 7). The issue of personal jurisdiction and forum *non conveniens* were raised together with the res judicata question in Lanz's original motion to dismiss (DN 10), and likewise went unaddressed.

The Kepleys take issue with piecemeal litigation of the various grounds for dismissal. They urge that in light of the court's order permitting supplemental briefing after remand of the action,

Lanz's failure to further discuss jurisdiction and venue at that time should bar his current motion. The court's June 12, 2013 Order stated, however, that

> The court remanded the action, in part, "to allow the district court to consider the matter of claim preclusion in the first instance." *Id*. The issue of claim preclusion was briefed by the parties (DNs 10; 18; 19) between December, 2010 and February, 2011. The plaintiffs, Les and Bruce Kepley, cite *Ventas, Inc. v. Health Care Prop. Investors, Inc.*, 635 F.Supp.2d (W.D.Ky. 2009) in their responsive brief (DN 18, p. 17). However, the Court of Appeals cited *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291 (6th Cir. 2011) which was not decided until May, 2011. The court will take the unresolved matter of claim preclusion under advisement unless the parties wish to further brief the issue. **Should one or both parties seek further briefing, the parties shall confer and tender an agreed briefing schedule within fourteen (14) days from the date of entry of this order.**

(DN 35).

Thus, as an initial matter on remand, the court took up the res judicata issue to which the Court of Appeals specifically referred. As the issue was ultimately decided adversely to the Kepleys on an alternate ground, Lanz now seeks a ruling on the grounds he asserted for dismissal. The court will address these matters and deny the motion of the Kepleys to strike Lanz's motion.

The Kepleys also move to strike Lanz's reply to the Kepleys' response to his motion to dismiss, urging that it is an unauthorized pleading (DN 69).

The Kepleys filed a motion which included within it three different requests for relief (a motion to strike, a motion for default judgment, and a motion for a hearing) and a response to Lanz's motion to dismiss (styled an "objection")(DNs 63). Lanz responded to the motions (DN 65). The Kepleys then filed a reply in support of their motions to strike, for default judgment and for a hearing, and made additional arguments in support of their "objection" to the motion to dismiss (DN 67). The Kepleys thus essentially responded to Lanz's motion to dismiss twice. In any event, Lanz filed a single reply to the response to his motion to dismiss (DN 68). The Kepleys' motion to strike is wholly without merit, and will therefore be denied.

B.

The issues raised in the motions presently before the court are straightforward and the court finds that argument of counsel is unnecessary. The motion for a hearing will be denied.

C.

The Kepleys seek default judgment. They cite no authority in support of their argument.

Such a motion is premature inasmuch as the Clerk has not received a request for entry of default pursuant to Fed.R.Civ.P. 55(a). *See, Ramada Franchise Systems, Inc. v. Boroda Enterprises, LLC*, 220 F.R.D. 303 (N.D.Ohio 2004); *Lane v. Progressive Exp. Ins. Co.*, 2011 WL 2173791 (W.D.Ky. 2011); 10A Federal Practice and Procedure, 3d Ed., Wright, C., Miller, A., and Kane, M., § 2682.

Additionally, the Kepleys would not be entitled to default against Lanz. Lanz has appeared and defended the action against him by filing a motion to dismiss (DN 10) in lieu of answer, and has pursued a ruling on the merits of the arguments raised in that motion (DN 62). No answer is yet due.

Therefore, the motion for entry of default judgment will be denied.

D.

Lanz has added a new argument in his renewed motion to dismiss. He urges that the complaint fails to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), contending that claims of anticipatory breach only apply to executory contracts. The Kepleys urge that Lanz may not now raise a new substantive defense in this most recent pleading, as the defense was available, but was not asserted by him in his original motion to dismiss.

The Kepleys correctly state that Fed.R.Civ.P. 12(g)(2) precludes successive 12(b) motions. The motion by Lanz is essentially a hybrid. On the one hand, it seeks to renew the two remaining grounds stated in his original motion and obtain a ruling thereon. This is permissible. On the other hand, it is a successive motion to the extent that it raises a 12(b)(6) defense that should have been asserted in the original motion.

As explained in 5C Charles Alan Wright, *et al*., Federal Practice & Procedure § 1385 "Application of Rule 12(g) – In General," (3d. ed. 1998),

> The ban against successive pre-answer motions extends to the three "substantial defenses" listed in Rule 12(h)(2) – failure to state a claim upon which relief can be granted (Rule 12(b)(6)), failure to join a party indispensable under Rule 19 (Rule 12(b)(7)), and failure to state a legal defense to a claim (Rule 12(f)). The right to raise these defenses by preliminary motion is lost when the defendant neglects to consolidate them in his initial motion. Consequently, if the defendant first moves to dismiss on the ground of lack of jurisdiction over the person, he is not allowed to make a second preliminary motion to dismiss on the ground of failure to state a claim upon which relief can be granted. After denial of the initial challenge, the defendant should file an answer. However, even though a Rule 12(b) motion has been made and a second Rule 12(b) motion is not permitted, the three defenses listed in Rule 12(h)(2) may be raised on a motion under 12(c) for judgment on the pleadings, on a summary judgment motion, or at trial.

Under a strict application of the rule, the newly-minted 12(b)(6) grounds should be disregarded.

However, despite their request that we enforce the rule, the Kepleys have expressed concern over the long and arduous path this case has taken. Further, Lanz requests that the court exercise its discretion to consider the 12(b)(6) grounds at this time, in furtherance of the interests justice and efficiency. Lanz indicates that he would likely file a 12(c) motion should the court decline to consider the grounds for dismissal under Fed.R.Civ.P. 12(b)(6). This would again delay the progress of the case.

In addition to to urging that the court disregard the 12(b)(6) arguments on procedural grounds, the Kepleys have also responded substantively to those arguments. Lanz has replied. Thus the issues are fully briefed. It makes sense, in the court's view, to address the 12(b)(6) grounds now as opposed to later in a 12(c) motion, and permit the case to move forward upon disposition of the pending motions. This approach has been taken in a limited number of cases catalogued in Wright & Miller, *et al. See Id.* Therefore, in its discretion, the court will consider Lanz's motion to dismiss (DN 62) in its entirety.

### E. Asserted Grounds for Dismissal

#### 1. Lack of Personal Jurisdiction

Lanz urges that the Kentucky long-arm statute cannot reach him in Florida where he resides and thus the court lacks personal jurisdiction over him. In support of his argument, Lanz has filed a declaration (DN 10-2) stating that :

1. He is a citizen of Florida and owns a home in Illinois. He does not own property or conduct business in Kentucky.

2. Executives of ATA came to Chicago to meet with him concerning investing in ATA.

3. He was told that ATA was in serious financial condition and needed funding by the end of 2004. He agreed to take an equity stake in ATA, and on December 31, 2004, he purchased one Series A Convertible Share in the company.

4. During the negotiations for the purchase, he did not enter Kentucky in connection with the transaction itself.

5. In 2005, he entered into an Amended and Restated Investors Rights Agreement ("IRA"). He did not enter Kentucky during the negotiation or execution of the IRA.

6. He traveled to Kentucky one time in 2009 to attend an ATA Board of Directors meeting. He resigned as a Director soon after the 2009 meeting.

7. All discussions and actions between Crimson and Lanz concerning Crimson's offer to purchase Lanz's ATA share occurred in Illinois, Florida, and Oklahoma.

Based on the foregoing statements focusing on a lack of physical presence in the Commonwealth, Lanz asserts that this court lacks personal jurisdiction over him, and that the claims against him should be dismissed pursuant to Fed.R.Civ.P. 12(b)(2).

The plaintiff bears the burden of establishing personal jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (*citing Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996)). While the district court may hold an evidentiary hearing to determine whether or not jurisdiction exists, it need not do so; in that case the plaintiff "need only make a prima facie showing of jurisdiction," *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996), establishing the necessary facts with "reasonable particularity." *Neogen*, 282 F.3d at 887 (*quoting Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). Without a hearing the court may not "consider facts proffered by the defendant that conflict with those offered by the plaintiff," *id.* (*citing Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)), and "must consider the pleadings and affidavits in a light most favorable to the plaintiff." *Compuserve*, 89 F.3d at 1262 (*citing Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

We note that "[a] federal district court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so." *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 148 (6th Cir. 1997). In all questions of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Due Process Clause imposes constitutional limits on this court's jurisdiction, and on the reach of Kentucky's long-arm statute, KRS 454.210.

Kentucky's long-arm statute had been interpreted, until recently, as reaching the outer limits of what federal law allows. (*See, Cummings v. Pitman*, 239 S.W.3d 77, 84 (Ky. 2007)[2], *overruled, Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011)). However, the Supreme Court of Kentucky overruled *Cummings* and refined the inquiry into matters of personal jurisdiction:

> [T]he proper analysis of long-arm jurisdiction over a nonresident defendant must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars*, 336 S.W.3d at 57.

Personal jurisdiction may take one of two forms. "General jurisdiction" attaches upon "a showing that the defendant has continuous and systematic contacts with the forum state sufficient

---

[2]The Supreme Court of Kentucky held in *Cummings v. Pitman*, 239 S.W.3d 77, 84 (Ky. 2007) that "The purpose of this statute is to permit Kentucky courts to exercise personal jurisdiction over nonresident defendants while complying with federal constitutional due process. We have interpreted this statute to authorize *in personam* jurisdiction to reach the outer limits of the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution, and because of this breadth, our statutory requirements have merged into the federal due process analysis. For this reason, we 'need only determine whether the assertion of personal jurisdiction violates constitutional due process.'"

to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant." *Kerry Steel*, 106 F.3d at 149. Alternatively, "specific jurisdiction" can be premised on as little as a single event or transaction in the forum state, provided the claims at issue "'arise out of or relate to' a defendant's contacts with the forum." *Id.* (*citing Helicopteros Nacionales de Colombia S.A., v. Hall*, 466 U.S. 408, 414-415 & nn.8-10 (1984)).

A plaintiff facing a properly supported motion for dismissal on personal jurisdiction grounds "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Citizens National Bank of Paintsville v. MCNB Bank and Trust Company*, No. 7:12CV-102-KKC, 2013 WL 3894006 (E.D.Ky. July 23, 2013), *quoting Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Lanz argues that the Kepleys have failed to establish the doing or soliciting of business in Kentucky or any other persistent course of conduct in the Commonwealth by him which would subject Lanz to the jurisdictional reach of this court under the Kentucky long-arm statute. He further contends that the Kepleys have not alleged facts from which it can be gleaned that the purported injury arose from any such contacts with Kentucky. *Caesars*, 336 S.W.3d at 56.

Lanz's affidavit focuses solely on his apparent lack of physical presence in Kentucky. However, in a number of cases, Kentucky courts have found personal jurisdiction over out-of-state individuals who purposefully invested in, or guaranteed investments in Kentucky businesses where "the business operations set in motion by defendants had a realistic impact on the commerce of Kentucky." *See Southern Machine [Co. v. Mohasco Industries, Inc.*, 401 F.2d 374,] 386 [(6th Cir. 1968)]. The court reasoned that:

> It is the state where the company was headquartered and where its products were sold. As the home of ...[the] corporation, Kentucky was a reasonable and logical

place for suit to be brought against all defendants. Defendants "cannot complain if along with the profits from the (Kentucky) market (they) must also accept the process from the (Kentucky) courts." *Southern Machine, supra,* at 386.

*Long John Silver's, Inc. v. DIWA III*, 650 F.Supp.2d 612 (E.D.Ky. 2009), *citing Southern Machine, supra; National Can Corp. v. K. Beverage Co.*, 674 F.2d 1134 (6th Cir. 1982); *Perry v. Central Bank & Trust Co.*, 812 S.W.2d 166 (Ky.App. 1991); *Intercargo Insurance Co. v. B.W. Farrell, Inc.*, 89 S.W.3d 422 (Ky.Ct.App. 2002). The court noted that in *Perry*, "the guarantor had a stake in the success of the Kentucky business," "the guaranty would benefit a Kentucky business," and "the guaranty provided that it was to be governed by Kentucky law." The court further stated:

> [T]he guarantor caused a consequence in Kentucky because the money would not have been loaned to the daughter and son-in-law in Kentucky if not for the guaranty. *Id.* at 169. Further, the guaranty provided that it would be governed by Kentucky law, putting the guarantor "on notice that he could expect any legal ramifications to be dealt with in Kentucky." *Id.* The court also determined that personal jurisdiction in Kentucky was reasonable because the guarantor knew that the daughter and son-in-law were going to use proceeds from the loan to acquire an interest in a business located in Kentucky. *Id.*

*Long John Silver's,* supra at 622, *quoting Perry, supra.* at 167. *See also, National Can, supra* at 1137 (stating, with respect to a guarantor who had not physically entered Kentucky, "in signing [the guarantors risked their names and financial worth to aid in the establishment of a Kentucky venture in which they had a property interest...It is our opinion that the guaranties, when signed by a person with an economic interest in the corporation," furnished the minimum contacts needed for personal jurisdiction).

Here, Lanz purchased an equity share in a struggling Kentucky corporation. Lanz Decl., ¶¶ 5 - 7. He purchased a Series A Convertible Preferred Share in ATA. Lanz Decl., ¶ 6. The IRA provided, among other things, a right to purchase additional shares of common stock and the right

to name a Director to the Board of Directors. Complaint ("Compl."), Ex. 1 (DN 1-2). Lanz served as a Director for an unknown period of time and traveled to Kentucky on one occasion for a board meeting. Lanz Aff., ¶¶ 9, 10.

Additionally, taking the facts alleged in the complaint in the light most favorable to the plaintiffs, in May of 2010, the Kepleys received a Notice of Proposed Sale of Lanz's share to its competitor, Crimson. Compl., ¶ 7. The plaintiffs also received notice that the Board of Directors would conduct a meeting to consider approval of the sale. Compl., ¶ 10. Les Kepley's address is listed in the complaint as Louisville, Kentucky. Bruce Kepley's address is listed as Jeffersonville, Indiana. ATA's offices are in Louisville, Kentucky. Thus communications from Lanz concerning his agreement to sell to Crimson were sent to Kentucky. The Kepleys objected the sale, Compl., ¶ 13, but despite their disapproval, Lanz's attorney communicated to the Kepleys and ATA that the sale to Crimson was on track to close as planned. Compl., ¶ 14. The Kepleys contend that the sale to ATA's competitor would have significantly diminished the value of their shares and that, as a result, they were forced to sell their shares to Crimson at a reduced price to minimize their losses. Compl., ¶¶ 12, 15. They allege that Lanz's act in contracting to sell his restricted share to a competitor of ATA constituted a breach and/or an anticipatory breach of the IRA. Compl., ¶¶ 5, 6, 11, 14.

The court finds that the purchase of an equity interest in ATA, the option to purchase additional shares, and the exercise of a Director's role on the board, for at least some period of time,[3] are sufficient to establish a *prima facie* showing of purposeful availment of the benefits and

---

[3]The Kepleys have identified additional facts which are not submitted via affidavit, but rather merely recited in their brief. We do not rely on these assertions in our analysis. However, we note that nothing stated by Lanz refutes these facts: Lanz negotiated a provision in the IRA relating to his sister's position as Chief Financial Officer of ATA; Lanz appointed his attorney, his sister, then

(continued...)

protections of Kentucky law. This does not appear to be a "one-shot transaction," but rather, evidences an ongoing interest in a Kentucky company. *Funk v. Limelight Media Group, Inc.*, 2006 WK 2983058, *4 (W.D.Ky. Oct. 16, 2006). "Jurisdiction may not be avoided merely because the defendant did not *physically* enter the forum state, so long as a commercial actor's efforts are purposefully directed toward residents of another state." *Id., citing Info-Med Inc. v. National Healthcare, Inc.*, 669 F.Supp. 793, 796 (W.D.Ky. 1987).

The Kepleys must also show that their cause of action "arose out of" Lanz's activities in Kentucky. Lanz's purchase of an equity interest in ATA, and his subsequent agreement to sell that interest purportedly in contravention of his obligations under the IRA, appears to meet the requirement to establish such a connection. Further, the very agreement which Lanz is alleged to have breached or anticipatorily breached provides for resolution of the dispute under Kentucky law. Thus it is not unreasonable to conclude that Lanz should have anticipated being haled into court here.

The court finds that the Lanz thus has a substantial enough connection with Kentucky to make the exercise of jurisdiction over him reasonable. If the first two factors are met, an inference arises that this third factor is also met. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996). There has been nothing offered which counsels a contrary finding.

For these reasons, the motion to dismiss for lack of personal jurisdiction over Lanz will be denied.

---

[3](...continued)
himself to serve in the capacity of Director on the Board; and from 2005 through 2009, Lanz participated in the day-to-day operations of ATA, and all major decisions of the company, either personally or through designees.

### 2. Dismissal under the Doctrine of Forum *Non Conveniens*

Lanz suggests that this action should be dismissed, as a more convenient forum for this litigation would be an Illinois court. "A dismissal on forum *non conveniens* grounds is appropriate when the defendant establishes, first, that the claim can be heard in an available and adequate alternative forum and, second, that the balance of private and public factors listed in *Gulf Oil*, 330 U.S. at 508-09, reveals that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006), *citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 n. 23 (1981). The doctrine of forum *non conveniens* is the exception, rather than the rule. The court, in its discretion, should transfer an action out of the plaintiff's chosen forum only when the chosen forum is inappropriate or results in oppression or vexation to the defendant which is out of proportion to the plaintiff's convenience. *Koster v. Lumberman's Mutual Casualty Co.*, 330 U.S. 518 (1947).

The court has already determined that personal jurisdiction exists over Lanz and that it is reasonable that he be haled into court here. Lanz has shown no significant inconvenience in being required to litigate the case here. The motion will be denied.

### 3. Failure to State a Claim Upon Which Relief May Be Granted

Lanz moves for dismissal of the complaint on the grounds that (1) the complaint fails to state a claim for breach of contract, as the Kepleys do not allege that any contract provision was actually breached; and (2) the complaint fails to state a claim for anticipatory breach of contract because the doctrine of anticipatory breach applies only to executory promises to perform. (DN 62-1).

To overcome a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). As explained in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009),

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [*Twombly, supra.*] at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id..*, at 557, 127 S.Ct. 1955 (bracket omitted).

The claims for breach of contract and anticipatory breach of contract are not independent in the complaint, but rather are urged in the alternative: "By executing a contract to sell his stock in direct contravention of the terms of the Amended and Restated Investors Rights Agreement Lanz breached and/or anticipatorily breached the Agreement." DN 1-1, ¶ 11.

The following provisions of the IRA, in pertinent part, are in play in the analysis herein:

1.5    "Restricted Shares" means the share of Series A Preferred Stock of the Company...


2.    Restrictions on Transfer/Right of First Offer of Company

2.1    Restricted Shares shall not be sold or transferred unless (i) either (A) they first shall have been registered under the Securities Act or (B) the Company first shall have been furnished with an opinion of legal counsel...that such sale or transfer is exempt, and (ii) the proposed transferee thereof is not a person or entity acting as or owning an interest in any company licensed or operating...as a postsecondary or proprietary education school...

2.3     Transfers Not Subject to Restrictions.  The Preferred Holders may Transfer Restricted Shares to a family member or to a trust, partnership...without compliance with this Section 2 provided that the transferee delivers to the Company a written instrument agreeing to be bound by the terms of this Agreement as if it were a Preferred Holder.

2.4     Offer of Sale; Notice of Proposed Sale.  If any Preferred Holder desires to Transfer any of the Restricted Shares...in any transaction other than pursuant to 2.3 of this Agreement, he shall first deliver written notice of his desire to do so (the "Notice") to the Company...Such notice shall constitute an irrevocable offer by the Preferred Holder to sell the Restricted Offered Shares to the Company at the Restricted Offered Price and upon the same terms and conditions as the Preferred Holder is willing to sell the Restricted Offered Shares to the proposed transferee.

2.5     Company's Option to Purchase.  (a)  The Company shall have the first option to purchase all or any part of the Restricted Offered Shares...

Lanz notes that to establish a breach of contract under Kentucky law, the plaintiff must prove the existence of a contract, breach of that contract, and damages flowing from the breach of contract. *Carrollton Hospitality, LLC v. Kentucky Insight Partners II, LP,* No. 13-21-GFVT, 2014 WL 2506463 (E.D.Ky. June 3, 2014).  Lanz notes that sec. 2.1 of the IRA, the contract he is alleged to have breached, states that Restricted Shares shall not be "sold or transferred" to a competitor.  He concludes that anything short of a completed sale or transfer of Lanz's share is insufficient to establish a breach of contract.

Lanz also contends that he cannot have anticipatorially breached the IRA because sec. 2.4 of the Agreement permits him to sell his share to a competitor upon the giving of notice and the right of first refusal to ATA.

Finally, Lanz contends that the doctrine of anticipatory breach is inapplicable in this case, as the doctrine only applies to executory contracts.

Lanz argues that the fact that the Kepleys "never allege that Lanz ever went through with that alleged deal [to sell his share to Crimson]...ultimately dooms their breach of contract claim." DN 62-1, p. 5. He contends that "if a party simply *agrees* to sell the shares but does not ultimately go through with the sale, there can be no breach." DN 62-1, p. 6 (emphasis in original). Lanz correctly states that the Kepleys have not alleged that Lanz sold or transferred his share to Crimson. However, they do not seek to establish breach of contract by nonperformance. Rather, the Kepleys contend that Lanz breached the contract by anticipatory repudiation.[4] Farnsworth explores the history of the doctrine of anticipatory repudiation and notes that:

> [T]he doctrine of anticipatory repudiation gained widespread acceptance...[C]ourts have accepted the general rule that an anticipatory repudiation gives the injured party an immediate claim to damages for total breach, in addition to discharging that party's remaining duties of performance...[C]ourts have refused to apply the doctrine when a party repudiates either a unilateral contract of a bilateral contract that has been fully performed by the injured party. It is difficult to explain the development of this exception, except as the result of a grudging acceptance of the doctrine itself...Courts have often avoided the exception by finding that some part of the agreed exchange has not been rendered...Furthermore, even if the injured party was under no duty to render any performance, courts have applied the doctrine if some performance by that party was a condition of the repudiated duty and was in this sense part of the agreed exchange.

---

[4]Professor E. Allan Farnsworth states that "The term *anticipatory breach* is elliptical, for what is meant is "anticipatory repudiation." Farnsworth, E.A., Contracts, § 8.20, Anticipatory Repudiation as a Breach (2d Ed. 1990).

Farnsworth, E.A., Contracts, § 8.20, Anticipatory Repudiation as a Breach, pp. 658-660 (2d Ed. 1990).  The IRA, which is incorporated into the Complaint, contains numerous duties required of both the investors and ATA, some of which appear to the court to remain executory promises.

As further explained,

> A repudiation is a manifestation by one party to the other that the first cannot or will not perform at least some of its obligations under the contract.  For a repudiation to have legal effect, the threatened breach must be serious.  According to the Restatement, Second, it must be serious enough that the injured party could treat it as total if it occurred.  A repudiation may be words or other conduct.  Usually a repudiation consists of a statement that the repudiating party cannot or will not perform.  The statement must be sufficiently positive to be reasonably understood as meaning that the breach will actually occur.

Farnsworth, E.A., Contracts, § 8.21, What Constitutes a Repudiation, pp. 662-63 (2d Ed. 1990).  The Complaint alleges that Lanz executed a contract agreeing to sell his share in ATA to Crimson, a competitor of ATA, and gave notice to the company concerning the agreement.  It is also alleged that Lanz's counsel advised the Kepleys that the sale was scheduled to close as planned, over the Kepleys' objections.  The Complaint alleges that this contract for sale to Crimson contravened Lanz's agreement to, in the vernacular, keep foxes out of the henhouse.  In purchasing the Series A Convertible Preferred Share of ATA, Lanz agreed to be bound by the restriction that it not be sold to a competitor.

With respect to the restrictions on Lanz's sale of his share, the court finds that Lanz's proposed reading of sec. 2.4 to permit his sale of the share to anyone with notice and a right of first refusal to ATA renders sec. 2.1(a) meaningless.  The court is required to construe a contract as a whole, "giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986).  If sec. 2.4 were read to permit the sale of Restricted Shares to

competitors as long as notice and a right of first refusal was given to the company, the statement in sec. 2.1 that Restricted Shares *shall not be sold or transferred unless* they have been registered when required and *the proposed transferee is not a competitor* is vitiated. The reading which harmonizes the terms would find that sec. 2.4 is a prerequisite to sale of Restricted Shares permitted under the agreement. Such sale would not include sales to competitors. Additionally, the prerequisites are not required to be met for transfers to family, trusts, partnerships, etc.

Based upon the foregoing analysis, the court concludes that Lanz has failed to establish that dismissal is appropriate for failure to state a claim upon which relief can be granted.

### III. Conclusion

For the reasons stated herein, the court has considered all of the arguments of the parties and will deny the various motions for relief. Rather than strike various pleadings, the court, in its discretion, has considered the arguments and concludes that the motion of the defendant, Gerald Lanz to dismiss for failure to state a claim upon which relief can be granted, for lack of personal jurisdiction, and for forum *non conveniens* should be denied in its entirety.

A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

April 30, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**